

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-16-2008

# USA v. Electro Glass Prod

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3191

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Electro Glass Prod" (2008). *2008 Decisions*. Paper 357.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/357

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-3191
_____

UNITED STATES OF AMERICA

v.

ELECTRO GLASS PRODUCTS,

Appellant.

_____

On Appeal From the United States District Court
for the Western District of Pennsylvania
(Criminal No. 06-cr-00117)
District Judge:  Honorable Donetta W. Ambrose

Argued September 29, 2008

Before: FISHER, CHAGARES, and HARDIMAN <u>Circuit</u> <u>Judges</u>.

(Filed:   October 16, 2008)


David M. Laigaie (Argued)
Mariana Rossman
DIL WORTH PAXSON, LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103

*Counsel for Appellant*

Mary Beth Buchanan
Robert L. Eberhardt (Argued)
700 Grant Street, Suite 400
Pittsburgh, PA 15219

    *Counsel for Appellee*

—————————————

OPINION OF THE COURT

—————————————

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Electro-Glass Products ("Electro-Glass") appeals its conviction for violating the Arms Export Control Act ("AECA"), arguing that the Government presented insufficient evidence to prove beyond a reasonable doubt that Electro-Glass acted willfully. Because the jury verdict is supported by sufficient evidence, we will affirm.

I.

We write solely for the benefit of the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Electro-Glass manufactures "glass preforms," including "solder glass preforms." Solder glass preforms are used, *inter alia*, by manufacturers of night vision equipment. The AECA requires manufacturers to obtain licenses before exporting military products that are on the United States Munitions List ("Munitions List").

In October 1993, a United States customs agent visited Electro-Glass to inquire about an order Electro-Glass received from a Dutch entity called B.V. Delft. Pursuant to

the agent's instructions, Electro-Glass sought a commodity jurisdiction determination from the Department of State ("DOS") regarding whether a license was necessary to export the preforms. The customs agent also made a presentation to Electro-Glass during this time period to educate the company's representatives about the AECA licensing requirements. In January 1994, DOS issued a commodity jurisdiction determination that the specific preform B.V. Delft ordered was on the Munitions List, and therefore Electro-Glass could not ship it without a license. Electro-Glass chose not to ship to B.V. Delft.

Eight years later, in June 2002, Electro-Glass received an order for solder glass preforms from an Indian company called B.E. Delft[1]. Electro-Glass was aware that these preforms were originally developed for military application in night vision devices. Electro-Glass also acknowledged that it was uncomfortable with continued dealings with B.E. Delft and that it recognized the similarity in this entity's name to B.V. Delft.

Electro-Glass sought guidance from several government agencies regarding its ability to ship to B.E. Delft. Electro-Glass contacted the Federal Bureau of Investigation and Congressman John Murtha, who referred Electro-Glass's inquiry to United States Customs. Although none of these governmental agencies told Electro-Glass *not* to make shipments to B.E. Delft, Electro-Glass never received actual authorization for the shipments. Moreover, a United States customs agent told Electro-Glass that he would

---

[1] On January 22, 2004, B.E. Delft began to operate as Bel-Optronic Devices Ltd. For consistency, we refer to this entity as B.E. Delft throughout the opinion.

3

have to make inquiries with three federal agencies, including DOS, to determine whether Electro-Glass could legally export the preforms. Without waiting for definitive authorization from the government, Electro-Glass made four shipments to B.E. Delft without obtaining a license.

On December 6, 2004, two United States customs agents visited Electro-Glass and told the company that it would need a license to ship preforms to B.E. Delft. Only then did Electro-Glass stop making shipments. On April 5, 2006, a grand jury indicted Electro-Glass on four counts of violating the AECA, one for each shipment that Electro-Glass made to B.E. Delft. After a four-day trial, a jury found Electro-Glass guilty on all four counts. Electro-Glass filed a timely appeal.

## II.

The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. Because Electro-Glass is appealing from a final judgment of conviction, we have jurisdiction pursuant to 28 U.S.C. § 1291. See Flanagan v. United States, 465 U.S. 259, 263 (1984); Catlin v. United States, 324 U.S. 229, 233 (1945).

Defendant bears a heavy burden on appeal. When considering the sufficiency of the evidence to uphold a criminal conviction, we must view the evidence in the light most favorable to the Government. See Glasser v. United States, 315 U.S. 60, 80 (1942); see also United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998) (noting that this Court applies a "particularly deferential standard of review when deciding whether a jury

4

verdict rests on legally sufficient evidence"). Seen in that light, we affirm if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[T]he evidence need not unequivocally point to the defendant's guilt as long as it permits a finding of guilt beyond a reasonable doubt." United States v. Davis, 183 F.3d 231, 238 (3d Cir. 1999); see also United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1990) ("Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." (quoting Brandom v. United States, 431 F.2d 1391, 1400 (7th Cir. 1970))).

### III.

To establish a violation of the AECA, 22 U.S.C. § 2778(c), the government must prove beyond a reasonable doubt that: (1) the defendant exported an article from the United States, (2) that article is listed on the Munitions List, (3) the defendant exported the article without a license, and (4) the defendant did so willfully. See United States v. Tsai, 954 F.2d 155, 160 n.3 (3d Cir. 1992). We have noted that the "willfulness" element of the AECA is established only "[i]f the defendant knew that the export was in violation of the law." Id. at 162. The Government does not need to prove the basis of that knowledge, or that the defendant was aware of the licensing requirement. Id.

Electro-Glass asserts that the Government failed to prove the "willfulness" element of the offense. To differentiate its case from those where AECA violations have been

5

established, Electro-Glass points to cases involving defendants who either admit knowing that their conduct was illegal or who act in a manner that demonstrates such knowledge by misrepresenting information to the Government. Electro-Glass also argues that most AECA cases involve shipments of military items to war-torn or hostile countries. See, e.g., Tsai, 954 F.2d at 158-59 (affirming a guilty verdict where the defendant falsified documents to smuggle items through Customs, had been informed that a license was required to export his product, and told an undercover agent to "act dumb" about the licensing requirement).

Pointing to more extreme AECA violations, however, does not automatically imply that Electro-Glass's conduct did not rise to the level of willfulness, and it certainly does not allow Electro-Glass to meet its heavy burden on appeal. The fact remains that Electro-Glass had a four-day jury trial, during which it had a full and fair opportunity to present a defense to the Government's charges. After weighing the evidence and evaluating the credibility of witnesses, the jury determined that the Government proved, beyond a reasonable doubt, that Electro-Glass violated the AECA willfully. In reviewing the jury verdict, we exercise great deference and affirm if *any* rational trier of fact could have found willfulness beyond a reasonable doubt. The fact that the record contains evidence which could have supported a contrary conclusion does not warrant reversal as long as there is sufficient evidence in the record to support the verdict. Here, we conclude that there is.

Considering the evidence in the light most favorable to the Government, with all of the credibility inferences viewed in favor of the Government, we find that a rational trier of fact could infer that Electro-Glass knew about the AECA licensing requirements dating back to the 1993-1994 time period and, therefore, that the company knew that at least some of its solder glass preforms were military products that could not be shipped without a license at the time Electro-Glass made shipments to B.E. Delft.  Specifically, a rational trier of fact could have concluded that: (1) a United States customs agent made a presentation to Electro-Glass representatives in 1993 about the AECA licensing requirements; (2) this presentation and the 1994 DOS commodity jurisdiction determination put Electro-Glass on notice that certain military products cannot be exported without a license; (3) Electro-Glass knew that the preform at issue in this case was "originally developed for military application," (Appendix 00753), and was therefore subject to DOS licensing; and (4) when Electro-Glass made the four shipments to B.E. Delft without obtaining a license or even requesting a commodity jurisdiction determination, it knew that doing so was illegal.  Thus, a rational trier of fact could have found, beyond a reasonable doubt, that Electro-Glass violated the AECA willfully.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.